# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| MATTHEW ONZE in as the legal guardian of minor of EVAN HERNANDEZ, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF ATLANTA, GEORGIA; OFFICER GARY RUSSELL, in his individual Capacity, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. |

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff Evan Hernandez by and through his next friend MATTHEW ONZE in his capacity as the personal representative of the minor Evan Hernandez, (hereinafter "Plaintiff") by and through their undersigned counsel of record and hereby file this Complaint for Damages.

## NATURE OF THE CASE

1.    This action arises under 42 U.S.C. §1983 for violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States

1

Constitution and is brought pursuant to 42 U.S.C. § 1983 and § 1988 and pursuant to Georgia law.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343.

3.    Defendants are each residents of the State of Georgia and Fulton County and are subject to the jurisdiction of this Court.

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the subject incident occurred in Fulton County, Georgia, which is located within the Northern District of Georgia.

## PARTIES

5.    Matthew Onze is the legal guardian of Minor Evan Hernandez.

6.    Plaintiff Evan Hernandez ("Plaintiff or Mr. Hernandez") is a citizen of the United States and at all relevant times was a resident of Georgia.

7.    Defendant City of Atlanta, through its agency the Atlanta Police Department ("APD"), is a corporate body, organized and established as a municipality by operation of the laws of the State of Georgia and is subject to suit.

8.      Defendant Officer Gary Russell ("Officer Russell") was at all

relevant times an officer employed by APD, acting under color of law

and within the course and scope of his employment. He is sued in his

individual capacity.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

9.      On September 4, 2023, at approximately 4:04 a.m., Atlanta Police

Department officers were dispatched to 227 Courtland St. NE in Atlanta, Georgia,

for a report of a property offense of suspected "entering autos."

10.    The 911 call did not report that the suspects had any weapons.

11.    Plaintiff Evan Hernandez, a 14-year-old minor at the time, was encountered

by Defendant Officer Gary Russell in the parking deck on foot.

12.    Mr. Hernandez then proceeded to run away from Officer Russell.

13.    Officer Russell then began to chase Mr. Hernandez on foot through the

parking deck.

14.    Officer Russell was able to catch up to Mr. Hernandez, and in less than a

second before tasing Mr. Hernandez, Officer Russell shouts "I'm gonna tase the

shit out of you. Get your ass on the ground." (4:04:18 Russell Body Camera

Footage)

15.    Officer Russell then successfully tased Mr. Hernandez while tackling him to

3

the ground.

16.    Mr. Hernandez did not have a weapon on his person.

17.    Mr. Hernandez did not make any verbal threats against Officer Russell at any times herein.

18.    Mr. Hernandez did not reach for any purported weapons nor act as if he had any weapons on his person at all times herein.

19.    As Mr. Hernandez ran, Officer Russell began to unholster his firearm while running after Mr. Hernandez.

20.    Mr. Hernandez was running away with his back to Officer Russell, he did not threaten or run toward any other person.

21.    Officer Russell had no basis to believe that Mr. Hernandez intended to harm any individual as he ran away from Officer Russell.

22.    Mr. Hernandez was captured, tased, and thrown down to the ground by Officer Russell (4:04:45 Russel Body Camera Footage)

23.    Mr. Hernandez screamed in pain and was taken to the sidewalk by Officer Russell. (*Id*. at 4:06)

24.    Mr. Hernandez then stated that he can't stand up and that he was tired and could be heard panting. (*Id*. at 4:07)

25.    Mr. Hernandez is placed in the back of Officer Russell's police car and can

be heard screaming, although what he says is inaudible. (*Id*. at 4:08)

26. Officer Russell tells Hernandez to "shut the fuck up." (*Id*. at 4:08:30)

27. Mr. Hernandez pleads to Officer Russell telling him he can't breathe (*Id*. at 4:09).

28. Mr. Hernandez continues saying he can't breathe and asks for the air conditioner to be turned on (*Id*. at 4:14)

29. Mr. Hernandez tells Officer Russell again that he can't breathe and that he "has asthma". (*Id*. at 4:18:39)

30. Mr. Hernandez tells Officer Russell again that "he can't breathe" and that he "got asthma". (*Id*. at 4:19)

31. Mr. Hernandez asks Officer Russell for water stating that he can "barely breathe" and that "I'm being so for real". (*Id*. at 4:19)

32. Mr. Hernandez is told to stop yelling by an unidentified Atlanta Police Officer on the scene. (*Id*. at 4:20)

33. Mr. Hernandez again tells Officer Russell "I cannot breathe, I cannot breathe, I cannot breathe". (*Id*. at 4:20:44)

34. Officer Russell does not respond nor render care.

35. Mr. Hernandez pleads "please do something…I can barely breathe…I have asthma". (*Id*. at 4:21:25)

36.    Officer Russell nor any other Atlanta Police Officer on scene responds to Mr. Hernandez nor renders care.

37.    Mr. Hernandez again pleads for water and tells Russell "I'm about to pass out" (*Id*. 4:22)

38.    Officer Russell responds to Mr. Hernandez by telling him to "just relax" (*Id*.)

39.    Officer Russell does not render aid or medical care to Mr. Hernandez.

40.    Mr. Hernandez says "I'm literally about to pass out" (*Id*. 4:22:45). Mr. Hernandez then asks again for water and pleads "I'm about to pass out" (*Id*. 4:25)

41.    Officer Russell does not render aid or medical care.

42.    Moments later EMS responders finally respond to the scene.

43.    Mr. Hernandez again asks for water and says he is about to faint. (*Id*. 4:27:50)

44.    An unidentified Atlanta Police Officer responds "me too" while other officers can be heard laughing in background. (Id.)

45.    Mr. Hernandez then begins to vomit in the back of the police vehicle (*Id*. 4:33)

46.    Officer Russell does not respond.

47.    Mr. Hernandez vomits for the second time in the police vehicle. (*Id*. 4:34)

48.    No immediate action is taken by either Officer Russell nor any other Atlanta Police Officers on scene.

49.    Mr. Hernandez is finally taken to Grady Hospital (*Id*. 4:46)

50.    Upon arrival at Grady Memorial Hospital, Mr. Hernandez lost consciousness, began having severe seizures, and was placed on a ventilator, where life saving measures were performed.

51.    Since the time of this incident, Mr. Hernandez has had multiple recurring seizures and is now under the lifelong care of a neurosurgeon, which has required multiple hospitalizations.

52.    Mr. Hernandez had no history of seizures prior to this incident.

53.    Mr. Hernandez will suffer from seizures for the rest of his life as a result of Officer Russell's actions and omissions, including the lack of medical attention and deprivation of oxygen.

54.    Mr. Hernandez was ultimately never charged with any crime for the conduct that occurred that evening.

55.    Officer Russell has received numerous citizen complaints while at the Atlanta Police Department for Maltreatment and/or Unnecessary force.

56.    At    least    two    previous    complaints    of    force    against    Officer    Russell    were

sustained by the Atlanta Police Department after an internal investigation.

57.    Officer Russell was internally investigated by the Atlanta Police Department in the instant case for violating Atlanta Police Standard Operating Procedures.

## CITY OF ATLANTA POLICY AND TRAINING AS IT RELATES TO THE USE OF FORCE

**58.**    According to APD's Use of Force policy (APD.SOP.3010), officers are required to:

a.    Use only the amount of objectively reasonable force necessary to protect themselves and others, effect an arrest, or bring an incident under control;

b.    Employ de-escalation techniques in all interactions, striving to gain voluntary compliance without using force;

c.    Consider the subject's age, frailty, medical condition, and mental health when making decisions about the use of force; and

d.    Provide medical attention as soon as practical to any person injured or complaining of injury after a use-of-force incident.

**59.**    At all relevant times, Officer Russell's conduct did not comply with APD's written policies, procedures, and training regarding the use of force.

## THE PATTERN OF UNCONSTITUTIONAL APPLICATION OF THE CITY'S FORCE POLICY AND TRAINING

60.    Officer Gary Russell (Badge No. 7670) has been employed by the Atlanta Police Department ("APD") in the Field Operations Division, Zone 5, since his hire date.

61.    APD maintains and enforces a Use of Force policy (APD.SOP.3010) that authorizes officers to use less-lethal and deadly force when they deem it "objectively reasonable" to effect an arrest, overcome resistance, or prevent escape.

62.    Prior to the September 4, 2023, incident involving Plaintiff, Officer Russell was the subject of multiple sustained disciplinary actions for violations related to the use of force and compliance with APD directives.

63.    On February 7, 2022, following an investigation into a citizen complaint (Case No. 21C0260MISC), APD's Office of Professional Standards ("OPS") sustained a finding that Officer Russell failed to take appropriate action in violation of APD policy section 1.01. He was suspended for one day.

64.    On May 8, 2023, following another citizen complaint (Case No. 22C0125MISC), OPS sustained findings against Officer Russell for (a) failure to take appropriate action under section 1.01 and (b) "Maltreatment or Unnecessary Force" under section 2.50 of APD's work rules.

65.    As discipline for these sustained findings, Officer Russell was suspended for four days on the section 1.01 violation and for one day on the section 2.50 "Maltreatment or Unnecessary Force" violation.

66.    Despite these sustained violations involving unnecessary force, APD retained Officer Russell in his assignment without altering his authority to use force under APD's written policies, without requiring remedial training sufficient to correct the behavior, and without restricting his ability to deploy less-lethal or deadly force against members of the public.

67.    APD's continued authorization for Officer Russell to perform full patrol duties, including the use of Tasers and physical takedowns, reflected APD's standard practice of allowing officers with prior sustained force violations to continue enforcing the law under the same policy framework.

68.    On September 4, 2023, while acting under and consistent with APD's Use of Force policy, Officer Russell used his city-issued Taser and performed a physical takedown of Mr. Hernandez resulting in catastrophic injury as stated above.

69.    This pattern and practice reflect the City's ongoing application of its Use of Force policy in a manner that permits and enables repeated uses of unnecessary or excessive force by officers with known disciplinary histories. The City of Atlanta and APD have had repeated incidents in which APD officers deployed Tasers

against unarmed or non-threatening individuals, resulting in serious injury or death.

70.     On May 30, 2020, during protests in downtown Atlanta, APD officers stopped a vehicle occupied by two college students, Messiah Young and Taniyah Pilgrim. Video footage showed officers forcibly removing the students from the car, breaking windows, and deploying Tasers against them. Neither student was armed, and both suffered injuries. In June 2024, the Atlanta City Council approved a $2 million settlement of their claims against the City (https://www.wabe.org/atlanta-city-council-approves-settlement-of-2m-for-students-pulled-from-car-by-police-during-2020-protests)

71.     On August 10, 2023, APD Officer Kiran Kimbrough conducted a traffic stop of 62-year-old church deacon Johnny Hollman. During the encounter, Officer Kimbrough deployed his Taser on Hollman, who then died at the scene. The Fulton County Medical Examiner ruled the death a homicide. In January 2024, Hollman's family filed a federal civil rights lawsuit, and the City approved a $3.8 million settlement. (https://www.axios.com/local/atlanta/2024/01/19/atlanta-deacon-tased-civil-rights-lawsuit)

72.     On July 10, 2018, APD Officer Jon Grubbs deployed his Taser against 65-year-old Jerry Blasingame, who was attempting to flee on foot after a stop. The

Taser caused Blasingame to fall, leaving him paralyzed from the neck down. In August 2022, a federal jury awarded $100 million in damages, including compensatory damages against the City of Atlanta, finding the force used was excessive (https://atlantablackstar.com/2022/08/28/black-senior-citizen-awarded-100-million-by-jury-after-atlanta-police-tasing-incident-left-him-a-quadriplegic)

73.    Each of these incidents occurred under APD's same Use of Force policy that permits Taser use when an officer deems it "objectively reasonable" to effect an arrest, overcome resistance, or prevent escape.

74.    In each case, the City of Atlanta resolved the matter through settlement or judgment but did not make sufficient changes to the policy, supervision, or training to prevent future similar uses of force.

75.    The repeated occurrence of serious injuries and deaths from APD Taser deployments — despite the City's knowledge of these incidents — demonstrates an established and ongoing custom or practice of applying its Use of Force policy in a manner that permits excessive Taser use against unarmed or non-threatening individuals.

76.    The incident in this case occurred less than four months after Officer Russell's most recent sustained violation for unnecessary force, during which time

no policy revisions, retraining requirements, or restrictions were imposed by APD to limit his use-of-force discretion.

77.    Even after these repeated occurrences of deaths or catastrophic injuries due to taser use by City of Atlanta's Officers, the City of Atlanta failed to discipline its officers and/or at the least make them undergo subsequent training. The City's conduct is reflective of a policy of deliberate indifference to the rights of those who have encounters with APD officers.

78.    Further the retention of Officer Russell in full patrol capacity, and to permit him to exercise use-of-force authority in the field without policy or training changes, is consistent with a broader pattern in which officers with prior sustained findings for maltreatment or unnecessary force are not removed from enforcement duties or meaningfully retrained.

## THE CITY'S PRACTICE OF IGNORING OFFICER'S FALSE JUSTIFICATIONS OR COVERUPS CONCERNING THE USE OF FORCE

79.    The City of Atlanta Police Department has a custom and practice of accepting false versions of police officers concerning its officers' use of physical force. The effect of this practice resulted in the catastrophic injuries of Evan Hernandez.

80.    The City of Atlanta, by and through the recurrent practices of its

police officers, including those charged with the investigation of civilian complaints of police abuse, has a custom and practice on the part of its officers as follows:

a. an officer commits an act of violence or an act of other breach of the constitutional rights of a civilian;

b. said officer falsely reports that they did not engage in the act of violence nor any other act constituting a breach of the constitutional rights of a civilian;

81.    Both the officer, along with and those officers designated to supervise that officer or to investigate the conduct of the officer, accept the officer's false statement concerning their conduct towards the civilian and either refuse or fail to even report the physical misconduct or, if they report that an incident occurred, they adopt the officer's false version of events despite immediately available evidence contradicting the officer's false version.

82.    By way of example, APD failed to conduct meaningful investigations of the following complaints wherein multiple officers were alleged to use gratuitous, excessive force without justification:

*Tyrone Carnegay*

83.    In October 2014, Officer Trevor King was off-duty and working

security at a Walmart store when he attempted to detain Tyrone Carnegay, who he believed to be shoplifting a tomato. *See Ex-Atlanta Cop Gets 5 Years for Beating Walmart Customer Over 'Stolen' Tomato*, AJC (May 8, 2018),

https://www.ajc.com/news/crime--law/atlanta-cop-gets-years-for-beating-walmartcustomer-over-stolen-tomato/jSnD2Crf5H94c9WjeU5p9I/.

84.    When Tyrone Carnegay attempted to exit the store, Officer King struck him seven times with a metal baton, breaking two bones in his legs (including a severe a compound fracture). *Id.*

85.    Incredibly, Officer King then arrested his victim and charged him with obstructing a police investigation and assaulting a police officer. *Id.*

86.    Officer King lied in the police report that he filed following the incident and indicated that Tyrone Carnegay reached for a gun. *Id.*

87.    Surveillance footage revealed that these claims were not true, and Officer King was federally charged with using unreasonable force and falsifying a police report. *Id.*

88.    Officer King was not fired from the APD. Instead, he was permitted to retire. *Id.*

89.   As a result of APD permitting King to "retire" rather than be terminated, King was able to keep retirement benefits and APD was able to avoid tacitly acknowledging that its employee engaged in wrongful conduct.

90.   Officer King was nonetheless ultimately convicted on federal charges and sentenced to five years in prison. *Id.*

### Raymond Clay

91.   On July 1, 2006, an arrestee (Raymond Clay) informed APD that Defendant Mark Gardner struck him in the head with a two-way radio and kicked him while he was not resisting. APD opened and closed its investigation without confirming or denying whether the allegation that Gardner used excessive force was true.

### David Childs

92.    On May 7, 2003, an uninterested bystander observed Defendant Gardner strike a handcuffed arrestee (David Childs) in the face with his knee and/or his gun while the arrestee was seated inside the Zone 3 precinct where surveillance videos were installed (the "Childs incident"), and informed APD of the same; despite the bystander's willingness to submit to a lie detector test to confirm his veracity, APD did not perform a lie detector test, and did not review the available surveillance video footage which would have confirmed or denied the allegation

against Gardner; APD had knowledge that the head wounds Childs sustained during his arrest suddenly re-opened and began bleeding again while he was handcuffed at the precinct, but did not make any inquiry as to how the arrestee was re-injured at the precinct. APD opened and closed its investigation without confirming or denying whether the allegation that Gardner used excessive force at the precinct was true.

*Ezoeke Parks*

93.    Ezoeke Parks informed APD that on August 23, 2011, 2 APD Officers beat her and her daughter, informing APD that: (i) Officer Vidal kicked her in her stomach, dragged and pulled her by her hair, and kneed her in her back during her arrest; and (ii) that Officer Holden grabbed her 14-year old daughter by her neck and kneed her in her stomach. The Atlanta Citizen Review Board (hereafter "ACRB") concluded that there was sufficient evidence to sustain the citizen's allegations of excessive force against both officers and recommended to APD that the officers be suspended and undergo psychological evaluation. APD rejected the ACRB's recommendation, and instead concluded that there was insufficient evidence to sustain the allegations of excessive force against either officers without subjecting anyone to a CVSD. More specifically, APD explicitly concluded that pulling the citizen's hair was a reasonable "method to

ensure that she was handcuffed." APD did not investigate or discipline either officer for failing to intervene in the other's use of excessive force.

*Bailey Cato*

94.     Bailey Cato informed APD that on September 14, 2014, 2 APD officers pepper-sprayed him and repeatedly punched him in the face and beat him without provocation. APD and the Chief rejected the ACRB's finding that the allegation that these 2 APD officers used excessive force and rejected ACRB's recommendation that the officers be suspended and receive additional training, and did not impose any discipline on the officers for their use of excessive force. Moreover, APD did not investigate or discipline either officer for failing to intervene in the other's use of excessive force.

*Robert Doe*

95.     Another example of this custom and practice involves Robert Doe. The last name is withheld because the victim of the officer's force was a minor at the time. In December of 2019, Robert Doe's legs were shattered by the reckless use of force by Atlanta Police Officer Erik Clanton.

96.     Robert was alleged to be selling water bottles to passing motorists when he was approached by Clanton and another officer in mid-town Atlanta.

97.    Fearful of police officers, Robert ran away. Robert reached and scaled a fence. As Robert reached the other side of the fence, below which was a 20-30 foot drop to a highway, Clanton forcefully ran into the fence—twice—causing Robert to lose his grip on the fence and causing him to fall. The fall shattered his legs and caused a broken shoulder and facial fractures.

98.    Officer Clanton falsely reported that, rather than causing Robert's fall, he had "attempted to reach for" Robert to pull him down from the fence.

99.    Despite the availability of graphic video evidence contrary to Clanton's report, The City of Atlanta accepted Clanton's denial of use of force on Robert.

## COUNT I
### 42 U.S.C. § 1983 and Georgia Law Excessive Force Claims against Officer Russell

100.  Officer Russell violated Mr. Hernandez's clearly established Fourth Amendment rights by striking and tasing Mr. Hernandez as he was running away unarmed and posing no threat of harm.

101.  At no point did Mr. Hernandez take any action to pose an imminent threat of serious harm or death to Officer Russell or any other person.

102.  At no point did Officer Russell have probable cause that Mr. Hernandez had committed any crime much less a dangerous felony involving threatening serious harm or death.

103.  At no point did Officer Russell have any information to reasonably indicate that Mr. Hernandez had a weapon or that he was otherwise potentially violent or dangerous.

104.  Officer Russell failed to give an actual warning before deploying his taser.

105.  Officer Russell's force was objectively unreasonable and violated Mr. Hernandez's clearly established Fourth Amendment rights.

106.  Officer Russell is liable to Plaintiff for the damages proximately caused by his unlawful conduct in violation of federal law including but not limited to Mr. Hernandez's pain and suffering.

107.  Officer Russell is not entitled to qualified immunity for his use of excessive deadly force because every reasonable officer would have known that tasing was an objectively unreasonable use of force against the fourteen (14) year old Mr. Hernandez to stop him from leaving the scene of the incident during the investigation of a non-violent property offense. In addition, Mr. Hernandez gave no reasonable indication or gesture he was armed and/or posed a threat of imminent harm to the officer or the public. Thus, the use of force was objectively unreasonable and violated the Fourth Amendment.

## COUNT II
### 42 U.S.C. 1983
### FALSE ARREST AGAINST
###  OFFICER RUSSELL

108.  By intentionally chasing, tasing and striking Evan Hernandez, Officer Russell falsely arrested Mr. Hernandez without a warrant or other due process and without actual or arguable probable cause that he had committed any crime, in violation his clearly established Fourth and Fourteenth Amendment rights

109.  Officer Russell is liable to Plaintiff for the damages proximately caused by his unlawful conduct in violation of federal law including but not limited to Mr. Hernandez's catastrophic injuries and pain and suffering.

110.  Officer Russell violated clearly established law and is not entitled to qualified immunity.


## COUNT  III
### Deliberate indifference to medical
### needs under 42 U.S.C.  1983
### against Officer Russell

111.  After Mr. Hernandez was chased and tased, he immediately fell to the ground.

112.  Mr. Hernandez immediately informed Officer Russell that he was having

trouble breathing and that he had asthma.

113.   He posed no threat or risk of harm to anyone and was not in any way physically resisting arrest.

114.   Mr. Hernandez informed Officer Russell over a dozen times over the course of the next 45 minutes that he couldn't breathe, was feeling faint, had asthma and needed medical assistance.

115.   Officer Russell's conscious decision to laugh, curse and ignore Mr. Hernandez rather than render medical aid constitutes deliberate indifference to Mr. Hernandez's serious medical needs in violation of the Fourteenth Amendment.

116.   Any reasonable officer would have known cursing and taunting a child who is struggling to breathe after a serious foot chase and being tased would require immediate medical aid and would violate Mr. Hernandez's Fourteenth Amendment rights to medical attention.

117.   Officer Russell is not entitled to qualified immunity for his failure to render aid to Mr. Hernandez in violation of the Fourteenth Amendment and is liable for damages resulting from the same.

**COUNT IV**
_Municipal Liability under 42. U.S.C. 1983_
_against the City of Atlanta_

118.   The City's insufficient oversight of use of deadly force incidents, unconstitutional policy, and inadequate training creates an overwhelming risk that

its officers will use deadly force when doing so is unconstitutional.

119. The frequency with which officers use circumstantially unreasonable force when trying to apprehend a fleeing suspect reinforces the need for the City to provide competent and thorough training on the circumstances which authorize the use of force.

120. Against all wisdom, and despite knowing that its officers fail to follow City policy when reporting uses of force — including failing to report deadly force — the City has taken no action.

121. Against all wisdom, and despite knowing that its officers have used deadly force to apprehend fleeing suspects in violation of the Fourth Amendment, the City has taken no action.

122. The repeated and recurring incidents of unreasonable use of force by APD officers, and the City's refusal and failure to discipline, train, or take any other remedial action, constitutes an informal and de facto custom of the City that authorizes, condones, and ratifies officers' unreasonable use of force during police-citizen encounters.

123. The City's actual policy and/or informal custom related to use of force as alleged above was the moving force for the constitutional violations of Mr. Hernandez causing catastrophic and life altering injuries for which he will suffer for the rest of his life.

## PRAYER FOR RELIEF

Plaintiffs respectfully request:

a.   Mr. Hernandez be awarded damages from the Defendants for the pain and suffering and of his injuries and be awarded all damages, including special, nominal, punitive, and compensatory damages permitted by operation of federal and Georgia law.

b.   That both Plaintiffs recover attorney's fees pursuant to 42 U.S.C. § 1988;

c.   That a trial by jury be had upon all issues so triable; and,

d.   That Plaintiff be awarded such other and further relief to which they are legally entitled.

**TRIAL BY JURY IS HEREBY DEMANDED.**

Respectfully submitted this 2nd day of September, 2025.

WILSON ROWLEY, LLC
*/s/ Joseph L. Wilson*
JOSEPH L. WILSON
Georgia State Bar Number 372083
JOHN BROGDON
Georgia State Bar Number 155380
Attorneys for Plaintiff

9 Dunwoody Park, Suite 111
Dunwoody, Georgia 30338
Tel:   (678) 210-1546
Fax:   (678) 210-3102
joe@tl4jga.com
john@tl4jga.com


/s/Sarah B. Flack

SARAH FLACK LAW LLC
Georgia Bar No. 196115
3355 Lenox Road NE Suite 750
Atlanta, Georgia 30326
Telephone: (404) 999-GOLD

Sarah@sarahflacklaw.com